United States District Court
Southern District of Texas

**ENTERED**

June 17, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ECHO WARE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-0067 |
| | § | |
| AUTOZONERS, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Echo Ware ("Plaintiff"), brings this action against her former employer AutoZoners, LLC ("Defendant"), for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq., and for retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).[1]  Pending before the court are Defendant AutoZoners, LLC's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 14), Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses and/or Motion for Judgment on the Pleadings ("Plaintiff's MSJ") (Docket Entry No. 15), and

---

[1] Plaintiff's Original Complaint, Docket Entry No. 1, pp. 1-2. Plaintiff's Original Complaint also asserted claims against AutoZone, Inc. Id. at 1.  The parties moved jointly to dismiss AutoZone, Inc. without prejudice on July 26, 2021 (Joint Motion to Dismiss, Docket Entry No. 10), and the court granted the motion that same day (Order, Docket Entry No. 11).  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Plaintiff's Objections to and Motion to Strike Summary Judgment
Evidence Proffered by Defendants ("Plaintiff's Motion to Strike")
(Docket Entry No. 16).   For the reasons stated below, Defendant's
MSJ will be granted, Plaintiff's MSJ will be denied as moot, and
Plaintiff's Motion to Strike will be denied.   Both parties have
filed motions in limine,[2] which will be denied as moot.

## I.   <u>Undisputed Facts</u>

Plaintiff is female.[3]  On January 4, 2020, Plaintiff was hired
as a Parts Sales Manager ("PSM") by AutoZone Store #5892 in
Houston, Texas.[4]  That same day, Plaintiff began her training as a
new employee and learned about AutoZone's Employee Handbook and
Code of Conduct.[5]   On January 7, 2020, Plaintiff acknowledged

---

[2]Defendant AutoZoners, LLC's Motion *in Limine* ("Defendant's
Motion in Limine"), Docket Entry No. 18; Plaintiff's Motion in
Limine, Docket Entry No. 19.

[3]Plaintiff's Original Complaint, Docket Entry No. 1, p. 2 ¶ 9;
Answer and Affirmative and Other Defenses, Docket Entry No. 5, p. 6
¶ 23.

[4]Oral Deposition of AutoZoners, L.L.C., by and through
Ms. Janesa Boudreaux-Lowery and Ms. Laura Berry ("Lowery and Berry
Deposition Excerpts"), Exhibit 2 to Defendant's MSJ, Docket Entry
No. 14-3, p. 2 line 24 - p. 3 line 3; <u>see also</u> AutoZoners
Information on Echo Ware, Exhibit 4-A to Defendant's MSJ, Docket
Entry No. 14-5, p. 6.

[5]Oral Deposition of Echo Ware ("Plaintiff's Deposition"),
Exhibit 1 to Defendant's MSJ, Docket Entry No. 14-2, p. 4 lines 12-
23; p. 7 line 15 - p. 8 line 20; <u>see also</u> Declaration of Derrick
Martin ("Martin Declaration"), Exhibit 4 to Defendant's MSJ, Docket
Entry No. 14-5, p. 2 ¶¶ 8-9 (stating that all AutoZone employees
receive a copy of the AutoZone Store Handbook and Code of Conduct
upon starting their employment, and that Plaintiff acknowledged
receipt of the handbook and code and agreed to comply with all
policies and procedures set forth therein).

having received AutoZone's Employee Handbook and Code of Conduct and agreed to abide by these policies.[6]

AutoZone's Employee Handbook is provided to all employees upon hiring and is intended to be a reference to the policies that govern employment.[7]   Employees must acknowledge receipt of the handbook, and they can access the handbook at any time through AutoZone's internal system or print a copy at the store.[8]   All AutoZone employees "are expected to read th[e] <u>handbook</u> and abide by AutoZone's policies and <u>Code of Conduct</u>."[9]   AutoZone's Employee Handbook states that AutoZone prohibits "unauthorized possession or removal of AutoZone's or an AutoZoner's property including but not limited to merchandise identified as managers dispose, markdown, throwaway, in-store use, DC use, salvage, or warehouse damages."[10]   The handbook also states that "[n]oncompliance with AutoZone policy,

---

[6]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 2 ¶ 9; User Compliance Report, Exhibit 4-B to Defendant's MSJ, Docket Entry No. 14-5, p. 7.

[7]Lowery and Berry Deposition Excerpts, Exhibit 2 to Defendant's MSJ, Docket Entry No. 14-3, p. 20 line 15 - p. 21 line 21; AutoZone's Store Handbook FY20, Exhibit 4-C to Defendant's MSJ, Docket Entry No. 14-5, p. 11.

[8]Lowery and Berry Deposition Excerpts, Exhibit 2 to Defendant's MSJ, Docket Entry No. 14-3, p. 20 line 15 - p. 21 line 7; AutoZone's Store Handbook FY20, Exhibit 4-C to Defendant's MSJ, Docket Entry No. 14-5, p. 18.

[9]AutoZone's Store Handbook FY20, Exhibit 4-C to Defendant's MSJ, Docket Entry No. 14-5, p. 11.

[10]<u>Id.</u> at 54.

poor performance or misconduct is subject to corrective action up to and including termination."[11]

When Plaintiff began working at AutoZone a clerical error resulted in discrepancies in Plaintiff's paycheck.[12] Plaintiff's hire date was incorrectly entered into AutoZone's payroll system as January 16, 2020, instead of January 4, 2020.[13] As a result, AutoZone's computerized system did not automatically generate an employee ID number for Plaintiff at the time of her start date, and Plaintiff could not use an employee ID number to clock in or out on AutoZone's digital timekeeping system from January 4 through January 15.[14] Because Plaintiff could not clock in and out of the digital system, AutoZone's automated payroll system did not register her hours worked and thus failed to pay her for those hours.[15]

On January 7, 2020, Plaintiff complained that she had not been issued a paycheck.[16] Plaintiff was advised that her paycheck for

---

[11]Id. at 53.

[12]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 4 ¶ 22.

[13]Id.

[14]Lowery and Berry Deposition Excerpts, Exhibit 2 to Defendant's MSJ, Docket Entry No. 14-3, p. 16 lines 4-14; Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 4 ¶ 23.

[15]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 5 ¶ 24.

[16]Plaintiff's Deposition, Exhibit 1 to Defendant's MSJ, Docket Entry No. 14-2, p. 10 line 24 - p. 11 line 1.

the pay period ending on January 18, 2020, would compensate her for the time she spent in orientation.[17]  But when the paycheck for the pay period from January 5 - January 18, 2020, was issued on January 24, 2020, it did not contain compensation for hours that could not be entered into AutoZone's digital system – hours from January 4 through January 11, 2020.[18]  Upon receipt of this paycheck, Plaintiff notified AutoZone that her paycheck was incorrect and did not include her manually-tracked hours.[19] AutoZone's Human Resources corrected the error and overnighted checks to Plaintiff for all the hours she had worked that were not entered into the digital system.[20]

On January 18, 2020, Plaintiff called Ms. Rosalind Anderson, the store manager, and stated that she was having car trouble.[21] That same day Kevin Williams, Plaintiff's co-worker and fellow PSM, reported to Ms. Anderson that Plaintiff's car was stuck by the side of the road and that Plaintiff had taken a battery out of the

---

[17]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 5 ¶ 25.

[18]Id. ¶¶ 26-27.

[19]Id. ¶ 27.

[20]Id. ¶ 28.

[21]Oral Deposition of Ms. Rosalind Yvette Anderson ("Anderson Deposition"), Exhibit 3 to Plaintiff's Response in Opposition to Defendant AutoZoners, LLC's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 24-3, p. 23 lines 7-10. See id. at 17 lines 7-8 (indicating that Ms. Anderson is a store manager).

store.[22]   Plaintiff later stated in an interview that "[she] was told it was a loaner battery," that she could use the battery to get her car, and that she "borrowed and brought the battery back on [January] 18th" within the span of an hour.[23]   In her deposition Plaintiff testified that she "requested to use a loaner battery" and "was given approval by [Mr. Williams]."[24]

   Ms. Anderson reported Mr. Williams' report of Plaintiff's unauthorized property removal to District Manager Janesa Lowery in accordance with AutoZone's Problem-Solving Procedure.[25]   Ms. Lowery reported the information to Michael Warren, who opened an investigation.[26]   Mr. Warren is responsible for investigating allegations of unauthorized removal of company property.[27]

---

[22]See id. at 24 lines 20-24 (relating Mr. Williams' report to Ms. Anderson); 19 lines 11-21 (stating that Mr. Williams was a PSM and had the same job duties as Plaintiff).

[23]Interview Statement, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, p. 117.

[24]Plaintiff's Deposition, Exhibit 2 to Plaintiff's Response, Docket Entry No. 24-2, p. 45 lines 16-18.

[25]Anderson Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 24-3, p. 22 lines 10-13, p. 35 line 4 - p. 36 line 1; see also AutoZone's Store Handbook FY20, Docket Entry No. 14-5, pp. 27-28 (employees are to "[r]eport problems or concerns, either in writing or by expressing verbally, to [their] immediate manager/supervisor" and listing "application of AutoZone policies, practices, rules, regulations and procedures" as an example of a "concern").

[26]Excerpts from Oral Deposition of Michael Warren ("Warren Deposition Excerpts"), Exhibit 3 to Defendant's MSJ, Docket Entry No. 14-4, p. 2 lines 1-11 (identifying Janesa Lowery as Janesa Boudreaux).

[27]Id. at 5 line 25 — p. 6 line 6.

Mr. Warren's fact investigation began on January 27, 2020, and involved interviewing the three individuals present in Store #5892 on the date of the incident: Plaintiff, Mr. Williams, and Isaiah Villasana, an AutoZone Customer Service Representative.[28] All three interviews were transcribed by Mr. Warren, witnessed by Ms. Lowery, and signed by Mr. Warren, Ms. Lowery, and the respective witness.[29]

Mr. Williams stated in his interview that he saw Plaintiff take a new battery from the shelf and leave the store with it.[30] Mr. Williams further stated that he did not authorize the removal of the new battery, that he told Plaintiff not to take it, and that he warned her she could be terminated if she took it.[31] Mr. Williams stated that Plaintiff returned about an hour later with the battery, now used, with only a 34% charge.[32]

Plaintiff stated in her interview that she took the battery with permission from Mr. Williams.[33] Plaintiff stated that she did not know that taking the battery was a terminable offense and that she thought Mr. Williams had authority to allow her to take it.[34]

---

[28]Id. at 6 line 25 - p. 7 line 3.

[29]Initial Interview Statements, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, pp. 116-119 (Plaintiff), 122-125 (Williams), 128-130 (Villasana).

[30]Id. at 123-124.

[31]Id.

[32]Id. at 124.

[33]Id. at 118.

[34]Id.

Mr. Warren stated that during Plaintiff's interview, she pointed out the specific battery she took and admitted having taken it.[35]

Mr. Villasana stated in his interview that he saw Plaintiff leave the store with the battery and return it later.[36] Mr. Villasana further stated that he did not hear anyone give Plaintiff permission to take the battery and that he heard Mr. Williams warn Plaintiff that she could be fired for taking it.[37]

Mr. Warren prepared an investigation file that included transcripts of the interviews and a narrative of his factual findings.[38] Mr. Warren submitted the investigation file to Derrick Martin for review in accordance with AutoZone policy.[39] Mr. Martin is AutoZone's Regional Human Resources Manager.[40] After reviewing the loss investigation file, Mr. Martin recommended that Plaintiff be terminated for (1) failing to comply with AutoZone policy and

---

[35]Warren Deposition Excerpts, Exhibit 3 to Defendant's MSJ, Docket Entry No. 14-4, p. 7 line 17 - p. 8 line 10.

[36]Interview Statement, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, pp. 129-130.

[37]Id. at 130.

[38]General Comments by Michael Warren, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, p. 114.

[39]See Warren Deposition Excerpts, Exhibit 3 to Defendant's MSJ, Docket Entry No. 14-4, p. 6 lines 22-24, p. 7 lines 10-11 (in which Mr. Warren states that he forwarded his file to "decision-makers" and "HR"); Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 3 ¶ 16 ("Regional Loss Prevention Manager, Michael Warren, submitted the factual findings of his investigation to me for review in conjunction with AutoZone's policies.").

[40]See Defendant AutoZoners, LLC's Memorandum in Support of Its Motion for Summary Judgment ("Defendant's Memo"), attached to Defendant's MSJ, Docket Entry No. 14-1, p. 8.

(2) unauthorized possession or removal of AutoZone property.[41]
Mr. Martin's recommendation was reviewed by Regional Manager Laura
Berry.[42]

Ms. Berry testified during a deposition that she made the
decision to terminate Plaintiff because "[b]ased off of the
investigation and the statements that our regional loss prevention
manager took, [Plaintiff] violated company policy."[43]   On
February 1, 2020, Defendant terminated Plaintiff's employment.[44]
Shortly after Plaintiff was terminated, Ms. Anderson hired another
female, Giselle Thomas, to fill her position.[45]   Ms. Anderson
testified that she was not privy to or involved in Mr. Warren's
investigation.[46]   Ms. Berry testified that she has terminated
multiple male and female employees for unauthorized removal of
AutoZone property.[47]

---

[41]Corrective Action Review Form, Exhibit 4-E to Defendant's
MSJ, Docket Entry No. 14-5, p. 115; Martin Declaration, Docket
Entry No. 14-5, Exhibit 4 to Defendant's MSJ, pp. 3-4 ¶¶ 13-20.

[42]Defendant's Memo, attached to Defendant's MSJ, Docket Entry
No. 14-1, p. 8.

[43]Lowery and Berry Deposition Excerpts, Exhibit 2 to
Defendant's MSJ, Docket Entry No. 14-3, p. 8 line 23 - p. 9 line 5;
p. 17 lines 14-18.

[44]Id. at 3 lines 4-6.

[45]Id. at 6 line 3 - p. 7 line 8.

[46]Anderson Deposition, Exhibit 3 to Plaintiff's Response,
Docket Entry No. 24-3, p. 48 line 4 - p. 49 line 15.

[47]Lowery and Berry Deposition Excerpts, Exhibit 2 to
Defendant's MSJ, Docket Entry No. 14-3, p. 23 lines 4-14.

On January 8, 2021, Plaintiff filed her Original Complaint.[48] Plaintiff alleged that on her first day of work, Ms. Anderson stated that "she did not like other females working in her store."[49] Plaintiff also alleged that she "was treated less favorably than her similarly-situated male counterpart, Kevin Williams[.]"[50] Plaintiff alleged that Defendant terminated her in retaliation for her engaging in the FLSA-protected practice of complaining that she had not been paid for her work in January of 2020.[51]

Defendant filed its motion for summary judgment on November 19, 2021;[52] Plaintiff filed a response on December 14, 2021;[53] and Defendant replied on December 20, 2021.[54] Plaintiff filed her motion for summary judgment on November 21, 2021;[55] Defendant filed a response on December 17, 2021;[56] and Plaintiff replied on December 21, 2021.[57]

---

[48]Plaintiff's Original Complaint, Docket Entry No. 1.

[49]Id. at 2 ¶¶ 10-11.

[50]Id. at 4 ¶ 26.

[51]Id. at 4 ¶¶ 32-33.

[52]Defendant's MSJ, Docket Entry No. 14.

[53]Plaintiff's Response, Docket Entry No. 24.

[54]Defendant AutoZoners, LLC's Reply in Support of its Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 29.

[55]Plaintiff's MSJ, Docket Entry No. 15.

[56]AutoZone's Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses and/or Motion for Judgment on the Pleadings ("Defendant's Response"), Docket Entry No. 25.

[57]Reply in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply"), Docket Entry No. 30.

Plaintiff filed a motion to strike certain summary judgment evidence on November 30, 2021;[58] and Defendant responded on December 17, 2021.[59] The parties filed their motions in limine on December 3, 2021.[60]

## II.  Plaintiff's Motion to Strike

### A.  Plaintiff's Argument Concerning an Un-redacted Exhibit Is Moot.

Plaintiff argues that the court should strike AutoZoners Information sheet, attached as Exhibit 4-A to Defendant's MSJ, because Defendant did not redact Plaintiff's date of birth in that document.[61]  On December 1, 2021, Defendant filed an Unopposed Motion to Substitute Exhibit (Docket Entry No. 17), which the court granted.[62]  The redacted Exhibit 4-A was filed into the record.[63] Plaintiff's argument concerning the unredacted exhibit is therefore moot.

---

[58]Plaintiff's Motion to Strike, Docket Entry No. 16.

[59]AutoZone's Opposition to Plaintiff's Objections to and Motion to Strike Summary Judgment Evidence ("Defendant's Response to Plaintiff's Motion to Strike"), Docket Entry No. 26.

[60]Defendant's Motion in Limine, Docket Entry No. 18; Plaintiff's Motion in Limine, Docket Entry No. 19.

[61]Plaintiff's Motion to Strike, Docket Entry No. 16, p. 1 ¶ II.A.

[62]Order, Docket Entry No. 22.

[63]Redacted AutoZoners Information, Exhibit 4-A, Docket Entry No. 23.

**B.    The Investigation File and Statements Within It Are Not Hearsay.**

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." Fed. R. Evid. 801(c); <u>United States v. Piper</u>, 912 F.3d 847, 855 (5th Cir. 2019). The investigation file, Exhibit 4-E to Defendant's MSJ (Docket Entry No. 14-5), is not hearsay because it is not being offered to prove the truth of the matter asserted. Mr. Martin stated that the investigation file and statements were submitted to him by Mr. Warren for consideration and review, and that he utilized the file and his knowledge of AutoZone's policies and practices to recommend that Plaintiff be discharged.[64] Mr. Martin submitted the investigation file and his recommendation to Ms. Berry.[65]

The investigation file and the statements within it, including Plaintiff's signed statement, were offered to show Defendant's reasons for terminating Plaintiff, <u>not</u> for the truth of the matter asserted in the statements. Therefore, they are not hearsay. <u>See</u> <u>Brauninger v. Motes</u>, 260 F. App'x 634, 636-37 n.1 (5th Cir. 2007) (holding that human resource manager's reports, which included witness statements, recording her investigation into complaints against a terminated employee were not hearsay because the "key

---

[64]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, pp. 3-4 ¶¶ 16-20.

[65]<u>See id.</u> at 4 ¶ 20; Corrective Action Review Form, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, p. 115; Martin Declaration, Docket Entry No. 14-5, Exhibit 4 to Defendant's MSJ, pp. 3-4 ¶¶ 13-20.

issue [was] not whether the accusations [against the employee] were true but instead whether [the defendants] relied on them" in making the termination decision); <u>McDaniel v. Temple Independent School District</u>, 770 F.2d 1340, 1349 (5th Cir. 1985) (transcript of school board hearing was admissible where admitted "to show the motive and intent of the Board of Trustees in deciding not to renew plaintiff's employment contract").

The investigation file includes Plaintiff's signed witness statement, which is not hearsay because it constitutes a statement by a party opponent. <u>See</u> Fed. R. Evid. 801(d)(2)(A) (a statement is not hearsay if it "is offered against an opposing party and was made by the party in an individual or representative capacity"); <u>United States v. Trevino Chavez</u>, 830 F. App'x 425, 429 (5th Cir. 2020) ("Statements made by and offered against a party are not hearsay.").

**C.   The Exhibit 4 Records Are Admissible as Business Records.**

Even if the court were persuaded that the investigation file and the statements within it were hearsay, the court would admit those documents along with all of the Exhibit 4 records pursuant to the "business records" exception.   Federal Rule of Evidence 803(6) provides an exception to the general prohibition on hearsay for records of regularly conducted activities if

    (A)   the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)   making the record was a regular practice of that activity;

(D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)   the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Plaintiff argues that the records in Exhibit 4 are hearsay because Defendant "failed to identify Derrick Martin as a custodian of record in discovery," "stated in their interrogatories that the documents produced were not business records," and "failed to appear for testimony on the topic of the search, gathering, storage, and custody of documents responsive to Plaintiff's requests for production[.]"[66]  Plaintiff also argues that "Derrick Martin's testimony that he is a custodian of record should be stricken as lacking foundation, and he should be deemed as an unqualified witness for purposes of the business record exception to hearsay."[67]

Plaintiff's arguments depend on the contention that "without a proper custodian of record or qualified witness," the records are

---

[66]Plaintiff's Motion to Strike, Docket Entry No. 16, p. 3 § II.B.

[67]Id.

inadmissible because "[u]nauthenticated documents are improper as summary judgment evidence."[68]  The court is not persuaded by this argument.  The Fifth Circuit has explained that

> [a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Lee v. Offshore Logistical & Transport, L.L.C.</u>, 859 F.3d 353, 355 (5th Cir. 2017); <u>LSR Consulting, LLC v. Wells Fargo Bank, N.A.</u>, 835 F.3d 530, 534 (5th Cir. 2016).  After a 2010 revision to Rule 56, "materials cited to support or dispute a fact need only be <u>capable</u> of being 'presented in a form that would be admissible in evidence.'" <u>LSR Consulting, LLC</u>, 835 F.3d at 534 (quoting Fed. R. Civ. P. 56(c)(2)).  This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A).

<u>Maurer v. Independence Town</u>, 870 F.3d 380, 384 (5th Cir. 2017).

The Fifth Circuit's ruling in <u>Maurer</u> requires the party moving to strike evidence to show that the documents in question are not capable of being presented in a form that would be admissible at trial.  <u>See</u> <u>Gamel v. Forum Energy Technologies, Inc.</u>, Civil Action No. H-19-3604, 2021 WL 3556639, n.4 (S.D. Tex. Aug. 11, 2021), <u>aff'd</u>, No. 21-20479, 2022 WL 1551835 (5th Cir. May 17, 2022).  Plaintiff does not argue that these documents are incapable of being admitted at trial, and the documents appear to be the type of evidence that would likely be admitted at trial as business records.  Therefore, Plaintiff's hearsay objection to the Exhibit 4 documents is overruled.

---

[68]<u>Id.</u> at 4.

**D.    Mr. Martin's Statements Are Not Conclusory and Are Based on Personal Knowledge.**

Plaintiff argues that the court should strike paragraphs 10, 13, 14, 15, 16, 18, 19, and 20 of the Martin Declaration because these paragraphs are "conclusory[.]"[69]

"A party cannot rely on mere conclusory statements to create an issue of fact and thereby defeat summary judgment." <u>Salazar v. Lubbock County Hospital District,</u> 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring).   A "conclusory" statement is one that "recites the bottom-line legal standard but fails to present any factual detail or specifics indicating what evidence will actually satisfy the requisite legal standard."   <u>Id.</u> (citing BLACK'S LAW DICTIONARY (11th ed. 2019)).   Mr. Martin presents the factual basis for every statement he makes in his declaration.

Mr. Martin states in paragraph 10 of his declaration that Plaintiff acknowledged receiving the Store Handbook and Code of Conduct.[70]   That same paragraph cites the attached User Compliance Report,[71] which lists the Store Handbook and Code of Conduct as

---

[69]Plaintiff's Motion to Strike, Docket Entry No. 16, pp. 4-5 ¶ II.C.   The court notes that while Plaintiff does not explicitly cite paragraph 10, she objects to language taken from that paragraph and erroneously cites it as coming from paragraph 13. Plaintiff also objects to language from paragraph 18, but erroneously cites it as coming from paragraph 16.

[70]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, p. 2 ¶ 10.

[71]<u>Id.</u>

-16-

being among Plaintiff's "Acknowledged Policies."[72]  Also attached
to the Martin Declaration is the Store Handbook itself, which
provides that "[u]pon hire, AutoZoners are required to acknowledge
that they accept their responsibility to read, understand and
comply with the contents of the handbook[,]" and that "AutoZoners
are required to acknowledge that responsibility on an annual
basis."[73]

None of the objected-to paragraphs contain legal conclusions.
The assertion in paragraph 10 - that Plaintiff acknowledged
receiving the Store Handbook and Code of Conduct - is not reciting
any "bottom-line legal standard[.]"  Salazar, 982 F.3d at 392.
Nor are any of the assertions in the other paragraphs that
Plaintiff asks the court to strike.  Paragraph 13, which states
that "[Plaintiff] was terminated . . . for violation of AutoZone
policy and unauthorized possession or removal of AutoZone
property"[74] - is a factual assertion about Defendant's stated
reasons for terminating Plaintiff.[75]

---

[72]User Compliance Report, Exhibit 4-B to Defendant's MSJ,
Docket Entry No. 14-5, p. 7.

[73]AutoZone's Store Handbook FY20, Exhibit 4-C to Defendant's
MSJ, Docket Entry No. 14-5, p. 77.

[74]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket
Entry No. 14-5, p. 3 ¶ 13.

[75]See Corrective Action Review Form, Exhibit 4-E to Defendant's
MSJ, Docket Entry No. 14-5, p. 115 (informing Plaintiff that she
would be terminated for "[f]ailure to comply with AutoZone Policy"
and "[u]nauthorized possession or removal of AutoZone's or an
AutoZoner's property").

Paragraphs 14 and 20 assert that Ms. Berry decided to terminate Plaintiff, paragraph 15 asserts that Ms. Anderson did not make the decision to terminate Plaintiff, and paragraph 16 asserts that Mr. Warren submitted the findings of his investigation to Mr. Martin for review.[76] These statements do not "recite[]" any "bottom-line legal standard[.]" See Salazar, 982 F.3d at 392. They are not legal conclusions. Nor is it a legal conclusion to state, as Mr. Martin does in paragraph 18, that he reviewed the written statements of Plaintiff and her co-workers,[77] or that Plaintiff admitted during her interview that she "removed AutoZone property, a car battery, from the store without the proper authorization."[78] These are statements of fact.

Mr. Martin swore that all of these statements were "based on [his] personal knowledge of AutoZone's policies and procedures, [Plaintiff's] employment history, and a review of company records that were made as part of a regular practice and kept in the course of regularly conducted activity of company business."[79] Courts can "reasonably infer that the contents of an employee's personnel file would be well within the sphere of responsibility of a senior human resources manager." Yanez v. Dish Network, L.L.C., Civil Action

---

[76]Martin Declaration, Exhibit 4 to Defendant's MSJ, Docket Entry No. 14-5, pp. 3-4 ¶¶ 14-16, 20.

[77]Id. at 3 ¶ 18.

[78]Id. at 4 ¶ 19.

[79]Id. at 2 ¶ 4.

No. 1:20-cv-177, 2021 WL 4691909, at *6 (S.D. Tex. April 23, 2021).
Plaintiff argues that paragraphs 8, 9, 13, 14, 15, 19, and 20
should be stricken for lack of personal knowledge, but these
objections fail for the same reason - the court presumes that Mr.
Martin, as a senior human resources manager, has the requisite
knowledge. See id. The Fifth Circuit has explained that the
declarant does not need to lay extensive foundation or make any
particular statement to establish personal knowledge. DIRECTV,
Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005). Furthermore,
"'personal knowledge does not necessarily mean contemporaneous
knowledge.'" In re Green, 968 F.3d 516, 524 (5th Cir. 2020).
Personal knowledge "can be inferred if such knowledge reasonably
falls within the person's 'sphere of responsibility,' particularly
as a corporate officer." Id.

The court concludes that the statements in the Martin
Declaration are admissible as statements of fact based on
Mr. Martin's personal knowledge.

### III.  Defendant's Motion for Summary Judgment

Plaintiff contends that Defendant (1) terminated Plaintiff
because of her sex, in violation of Title VII;[80] and (2) terminated
Plaintiff in retaliation for complaining about her pay issue, in

---

[80]Plaintiff's Original Complaint, Docket Entry No. 1, p. 4
¶¶ 23-28.

violation of the FLSA.[81]  Defendant argues that it is entitled to summary judgment because (1) Plaintiff cannot establish a <u>prima facie</u> case for gender discrimination or retaliation, and (2) Plaintiff "cannot show that [Defendant's] legitimate nondiscriminatory/non-retaliatory reasons for termination — violation of AutoZone policy and unauthorized removal of AutoZone property — is a pretext for discrimination or retaliation."[82]

## A.   Standard of Review

The court shall grant a motion for summary judgment if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).  Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  "The party

---

[81]<u>Id.</u> at 4-5 ¶¶ 32-38.

[82]Defendant's Memo, attached to Defendant's MSJ, Docket Entry No. 14-1, pp. 9-10.

moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting <u>Celotex</u>, 106 S. Ct. at 2552). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u> If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." <u>Id.</u> "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075. The court will not, "<u>in the absence of any proof, assume that the nonnmoving party could or would prove the necessary facts</u>." <u>Id.</u> (emphasis in original).

**B.   Plaintiff's Title VII Claim Fails as a Matter of Law.**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). An employee can prove discrimination through

direct or circumstantial evidence. <u>Wallace v. Seton Family of</u> <u>Hospitals</u>, 777 F. App'x 83, 87 (5th Cir. 2019) (citing <u>Wallace v.</u> <u>Methodist Hospital System</u>, 271 F.3d 212, 219 (5th Cir. 2001)).

1.   <u>Plaintiff has no direct evidence of discrimination.</u>

Plaintiff contends that "Anderson's comment on Plaintiff's first day that she did not want other females working in her store is direct evidence of sex discrimination."[83]

"'Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption.'" <u>Portis v. First National Bank of New Albany,</u> <u>Mississippi</u>, 34 F.3d 325, 328-29 (5th Cir. 1994) (citing <u>Brown v.</u> <u>East Mississippi Electric Power Association</u>, 989 F.2d 858, 861 (5th Cir. 1993)) (alterations in <u>Portis</u>).

For workplace comments to constitute direct evidence of discrimination, the comments must be (1) related to the plaintiff's protected class, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. <u>Rubinstein v. Administrators of the Tulane</u> <u>Educational Fund</u>, 218 F.3d 392, 400-01 (5th Cir. 2000). "Comments that do not satisfy these requirements are considered 'stray remarks' and are alone insufficient to defeat a motion for summary

---

[83]Plaintiff's Original Complaint, Docket Entry No. 1, p. 4 ¶ 27.

judgment." <u>Smith v. AT&T Mobility Services, L.L.C.</u>, No. 21-20366, 2022 WL 1551838, at *3 (5th Cir. May 17, 2022) (quoting <u>Jackson v. Cal-Western Packaging Corp.</u>, 602 F.3d 374, 380 (5th Cir. 2010)).

Defendant argues that Ms. Anderson's alleged comments cannot be direct evidence of discrimination because (1) Ms. Anderson "did not even have the authority to make termination decisions under company policy[,]" and (2) the ultimate decision to terminate Plaintiff was made by Ms. Berry, who had no knowledge of Ms. Anderson's alleged comment.[84]  Plaintiff argues that Ms. Berry "merely 'rubber stamped' a recommendation to terminate[.]"[85] Plaintiff refers to Ms. Berry's affirmation that she was "essentially a rubber stamp when it comes to the decision to terminate an AutoZoner[.]"[86]

If the official decision maker "merely 'rubber stamp[s]'" a subordinate's recommendation to terminate an employee, the subordinate's discriminatory animus passes to the decision maker. <u>See</u> <u>Haas v. ADVO Systems, Inc.</u>, 168 F.3d 732, 734 (5th Cir. 1999) n.1 (citing <u>Long v. Eastfield College</u>, 88 F.3d 300, 307 (5th Cir. 1996)).   The Fifth Circuit "look[s] to who actually made the

---

[84]Defendant's Memo, attached to Defendant's MSJ, Docket Entry No. 14-1, p. 20.

[85]Plaintiff's Response, Docket Entry No. 24, p. 19.

[86]<u>Id.</u>; Oral Deposition of AutoZoners, L.L.C., By and Through Ms. Janesa Boudreaux-Lowery and Ms. Laura Berry ("Lowery and Berry Deposition"), Exhibit 1 to Plaintiff's Response, Docket Entry No. 24-1, p. 46 lines 15-18.

decision or caused the decision to be made, not simply to who officially made the decision." Russell v. McKinney Hospital Venture, 235 F.3d 219, 227 (5th Cir. 2000). "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." Id. at 226-27 (5th Cir. 2000).

There is no clear test for what constitutes "influence" or "leverage." In Russell the employee showed that the person who allegedly made discriminatory remarks wielded such informal power within the company that "he effectively became the decisionmaker with respect to [the plaintiff's] termination." Id. at 228. The plaintiff pointed out that the speaker was the son of the company's CEO, that he had threatened to quit if the plaintiff was not fired, and that he had consistently received favorable treatment from the person who ultimately fired the plaintiff. Id. The court therefore concluded that "[a] jury could find that [the speaker] possessed power greater than that of the ordinary worker at his level due to his father's position as CEO of the parent corporation and that [he] took advantage of that power." Id.

Plaintiff does not present evidence that Ms. Anderson "had influence or leverage over the official decisionmaker" such that Ms. Anderson was "not [an] ordinary coworker[]," much less that Ms. Anderson was "principally responsible" for Plaintiff's termination. See Russell, 235 F.3d at 226. The undisputed record

-24-

evidence is that Mr. Williams reported to Ms. Anderson that Plaintiff had taken a battery from the store without permission, and Ms. Anderson passed that information to Ms. Lowery in accordance with AutoZone's Problem-Solving Procedure.[87] The record shows that this was the extent of Ms. Anderson's involvement in Plaintiff's termination.

Plaintiff offers no evidence that Ms. Anderson made any recommendation as to whether Plaintiff should be terminated. The recommendation to terminate Plaintiff came from Mr. Warren after his investigation.[88]   Mr. Warren reached this decision after interviewing two witnesses - Mr. Williams and Mr. Villasana - who said that Plaintiff took the battery without permission[89] and interviewing Plaintiff herself, who admitted to having taken the battery.[90]  Mr. Warren did not interview Ms. Anderson.[91]

---

[87]Anderson Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 24-3, p. 22 lines 10-13, p. 35 line 4 - p. 36 line 2; see also AutoZone's Store Handbook FY20, Docket Entry No. 14-5, pp. 27-28 (directing employees to "[r]eport problems or concerns, either in writing or by expressing verbally, to [their] immediate manager/supervisor" and listing "application of AutoZone policies, practices, rules, regulations and procedures" as an example of a "concern").

[88]Corrective Action Review Form, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, p. 115.

[89]Interview Statements, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, pp. 123-24 (Williams); 129-130 (Villasana).

[90]Id. at 117-18.

[91]Warren Deposition Excerpts, Exhibit 3 to Defendant's MSJ, Docket Entry No. 14-4, p. 7 lines 1-16.

The court concludes that even if Ms. Anderson had made the comments that Plaintiff attributes to her, these comments would not constitute direct evidence of discrimination because they were not "made by an individual with authority over the employment decision at issue." Rubinstein, 218 F.3d at 400-01.

2.    Plaintiff fails to make a prima facie discrimination case.

"To establish a prima facie case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the McDonnell Douglas burden-shifting analysis." Wittmer v. Phillips 66 Company, 915 F.3d 328, 332 (5th Cir. 2019).

Plaintiff therefore must establish that

> (1) [she] is a member of a protected group; (2) [she] was qualified for [her] position; (3) [she] was discharged or suffered some other adverse employment action; and (4) [she] was replaced with a person outside of the protected class, or [she] was treated less favorably than similarly situated employees of a different [gender].

Jones v. Overnite Transportation Co., 212 F. App'x 268, 272-73 (5th Cir. 2006). See also McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824 (1973).

Plaintiff fails to meet the fourth element of this test because she cannot show that she was replaced by a male or that she was treated less favorably than a similarly situated male. Plaintiff does not dispute that a female was hired to replace her.[92]

---

[92]See Lowery and Berry Deposition Excerpts, Exhibit 2 to Defendant's MSJ, Docket Entry No. 14-3, p. 6 line 3 - p. 7 line 8.

Plaintiff therefore contends that she was treated less favorably than a similarly situated male.[93]

The Fifth Circuit defines "similarly situated" narrowly and requires Plaintiff to show "'that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained.'" Perez v. Texas Department of Criminal Justice, Institutional Division, 395 F.3d 206, 213 (5th Cir. 2004) (quoting Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990) (alterations in Perez)). The standard for "nearly identical" conduct is a high one. See Martinez v. City of Texas City, Texas, Civil Action No. 3:13-CV-31, 2014 WL 710297, at *3 (S.D. Tex. Feb. 21, 2014). "[C]ourts have held that employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical,' as required to establish disparate treatment." King v. Stevenson Beer Distributing Co., 11 F. Supp. 3d 772, 788 (S.D. Tex. 2014) (internal quotations and citation omitted).

Plaintiff argues that Mr. Williams was similarly situated because he offered to let her take "an old core that a customer had left" at the store, and that allowing Plaintiff to "keep a car battery left by a customer . . . was the same policy violation

---

[93]Plaintiff's Original Complaint, Docket Entry No. 1, p. 4 ¶ 26.

that [Plaintiff] committed[.]"[94] The court is not persuaded by this argument.  The record reflects that Mr. Williams offered to let Plaintiff use an old car battery that a customer had left at the store.[95]  Nothing in the record suggests that Mr. Williams ever "kept" AutoZone property or removed it from the store.  Plaintiff was terminated for her "[u]nauthorized possession or removal of AutoZone's or an AutoZoner's property[.]"[96] Mr. Williams is therefore not an appropriate comparator.

Plaintiff states that she was treated differently than a similarly situated employee because she reported Mr. Williams to Ms. Anderson for stealing, and that Plaintiff was fired and Mr. Williams was not.[97] The court is not persuaded that this shows disparate treatment of similarly situated employees.  The undisputed evidence shows that Ms. Anderson suspected but never knew for a fact that Mr. Williams was stealing.[98]  Plaintiff reported to Ms. Anderson that she believed that Mr. Williams was stealing, but she admitted that she did not report any particular

---

[94]Plaintiff's Response, Docket Entry No. 24, p. 15 and n.32.

[95]Investigation Report, Exhibit 4-E to Defendant's MSJ, Docket Entry No. 14-5, pp. 111, 114, 124.

[96]Corrective Action Review Form, Docket Entry No. 14-5, p. 115.

[97]Plaintiff's Response, Docket Entry No. 24, p. 8.

[98]Anderson Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 24-3, p. 26 line 16 - p. 27 line 4.

item as stolen because she had no idea what Mr. Williams stole.[99]
On January 18, 2020, Mr. Williams reported Plaintiff for taking the
battery.[100]  The undisputed evidence shows that Ms. Anderson handled
both allegations of theft the same way – she reported both
employees to Ms. Lowery.[101]

In Plaintiff's case Ms. Lowery contacted Loss Prevention,
which determined that it was necessary to investigate Plaintiff.[102]
Although Ms. Lowery did not report Mr. Williams to Loss Prevention,
this does not mean that Ms. Lowery treated similarly situated
employees differently.  When Ms. Lowery reported Plaintiff to Loss
Prevention, the evidence against Plaintiff consisted of reports
from two witnesses who said that they saw Plaintiff take the
battery and Plaintiff's own admission that she took it.   By
contrast, no one claimed to have seen Mr. Williams take any
property from the store, and Ms. Lowery did not have an admission
from Mr. Williams that he had stolen anything.   In other words,

---

[99]Oral Deposition of Echo Ware, Exhibit 2 to Plaintiff's
Response, Docket Entry No. 24-2, p. 69 line 12 - p. 70 line 16.

[100]Anderson Deposition, Exhibit 3 to Plaintiff's Response,
Docket Entry No. 24-3, p. 24 lines 20-24.

[101]Id. at 27 lines 5-9 (Ms. Anderson states that she "talked to
[her] boss" about her suspicion that Mr. Williams was stealing);
p. 35 lines 4-11 (Ms. Anderson states that she "talked to [her] DM"
about Plaintiff's violation).

[102]Warren Deposition Excerpts, Exhibit 3 to Defendant's MSJ,
Docket Entry No. 14-4, p. 2 lines 1-11 (identifying Janesa Lowery
as Janesa Boudreaux).

there was more evidence to justify investigating Plaintiff than there was to justify investigating Mr. Williams. They were not "similarly situated," and Ms. Lowery's decision to report Plaintiff but not Mr. Williams to Loss Prevention was not an example of disparate treatment.

Plaintiff has failed to meet the fourth part of the <u>McDonnell Douglas</u> test because Plaintiff has not shown that she was replaced by a male employee or that a similarly situated male employee was treated more favorably. The court therefore concludes that Plaintiff has not made a <u>prima facie</u> case of workplace sex discrimination, and Defendant's MSJ should be granted as to Plaintiff's Title VII claims.

3. <u>Plaintiff cannot establish pretext.</u>

Even if Plaintiff had succeeded in making a <u>prima facie</u> case of sex discrimination, Defendant would be entitled to summary judgment because Plaintiff cannot meet her ultimate burden of showing that Defendant's legitimate, non-discriminatory reason for terminating her was a mere pretext for intentional gender discrimination.

"If the employee establishes a <u>prima facie</u> case, the burden shifts to the employer to state a legitimate, non-[discriminatory] reason for its decision." <u>LeMaire v. Louisiana Dept. of Transportation and Development</u>, 480 F.3d 383, 388-89 (5th Cir. 2007). "After the employer states its reason, the burden shifts

-30-

back to the employee to demonstrate that the employer's reason is actually a pretext for [discrimination]." Id. "[V]iolation of work rules constitutes a legitimate, non-discriminatory reason for terminating . . . employment[.]" Randle v. Dragados USA, Inc., Civil Action No. H-19-1058, 2021 WL 40271, at *7 (S.D. Tex. Jan. 5, 2021); see also Villarreal v. Tropical Texas Behavioral Health, Civil Action No. 7:19-CV-053, 2020 WL 6867075, at *5 (S.D. Tex. Oct. 30, 2020), aff'd, No. 20-40782, 2021 WL 3525023 (5th Cir. Aug. 10, 2021) ("Violation of company policy is a legitimate and nondiscriminatory reason for termination.").

A pretext analysis does not involve "second-guessing of an employer's business decisions." LeMaire, 480 F.3d at 391 (citing Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 126 S. Ct. 1027 (2006). Title VII does not require an employer to make proper decisions, only non-discriminatory ones. Lavergne v. HCA Inc., 452 F. Supp. 2d 682, 690 n.8 (E.D. Tex. 2006) (citing Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991) ("'[E]ven an incorrect belief tha[t] an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason' for termination.")). "The key inquiry is whether the employer acted with discriminatory motive. Establishing that the employer's conclusion may have been incorrect is not enough to show pretext." Eaglin v. Texas Children's Hospital, 801 F. App'x 250, 257 (5th Cir. 2020) (internal citations omitted).

-31-

Plaintiff's pretext argument is based on her allegation that Ms. Anderson stated that she did not want to work with females.  If this disputed allegation were true, it would still not be enough for Plaintiff to satisfy her burden of pretext.  A comment can establish pretext only when it is "made by an individual with authority over the employment decision at issue."  Ray v. United Parcel Service, 587 F. App'x 182, 196 (5th Cir. 2014).  Plaintiff's pretext argument therefore fails for the same reason that her direct evidence argument failed:  The alleged comment was not made by the individual with authority over the employment decision at issue.  Because statements by non-decision makers "are insufficient to establish discriminatory intent," Plaintiff cannot create any genuine issue of material fact regarding whether her discharge was a pretext for gender discrimination.  See Allen v. CVS Pharmacy, Inc., Civil Action No. 4:12-cv-1066, 2013 WL 3873239, at *6 (S.D. Tex. July 25, 2013) (citing Price Waterhouse v. Hopkins, 109 S. Ct. 1775, 1804-05 (1989) (O'Connor, J. concurring)).

The fact that Ms. Berry, a female, made the ultimate decision to discharge Plaintiff further rebuts any inference that Plaintiff was terminated due to gender.  "When decision makers are in the same protected class as the plaintiff, there is a presumption that unlawful discrimination is not a factor in the discharge."  Agoh v. Hyatt Corp., 992 F. Supp. 2d 722, 744 (S.D. Tex. Jan. 13, 2014).

Because Plaintiff has presented no evidence that Ms. Berry acted with discriminatory animus, she cannot create a genuine

-32-

dispute of material fact as to whether Defendant's non-discriminatory reason for termination is a pretext for intentional discrimination. Accordingly, the court will grant Defendant's MSJ as to Plaintiff's discrimination claim.

## C.  Plaintiff's FLSA Retaliation Claim Fails as a Matter of Law

Plaintiff contends that Ms. Anderson stated that "she was going to get rid of Plaintiff shortly after [Plaintiff's] complaints [of not getting paid,]" that this "is direct evidence of retaliatory animus[,]" and that Plaintiff's termination therefore violated the FLSA.[103]

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). Absent direct evidence of retaliation, FLSA claims, like Title VII claims, are analyzed under the burden-shifting framework established by the Supreme Court in McDonnell Douglas, 93 S. Ct. 1817. See Guillory v. PF & B Management, LP, Civil Action No. H-11-4377, 2013 WL 1181439, at *6 (S.D. Tex. Feb. 27, 2013), report and recommendation adopted, Civil Action No. H-11-4377, 2013 WL 1182061 (S.D. Tex. March 20, 2013). Within that framework plaintiffs bear the initial burden of proving a prima facie case. McDonnell Douglas, 93 S. Ct. at 1824.

---

[103]Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶¶ 34, 35, 37.

1.   Plaintiff Raises a Prima Facie Case for Retaliation.

To establish a prima facie case of retaliation under the FLS

a plaintiff must show that (1) she engaged in a protected activity

under the FLSA; (2) she was subjected to an adverse employment

action; and (3) there was a causal connection between the protected

activity and the adverse employment action.   Guillory, 2013

WL 1181439, at *6.

Plaintiff alleges that she engaged in protected activity by

complaining about not being paid for all the hours she worked, that

she was fired less than two weeks later, and that the temporal

proximity of her termination is sufficient to establish

causation.[104]

Plaintiff's complaint was protected activity under the FLSA.

"Although the FLSA does not explicitly require that wages
be paid on time, the courts have long interpreted the
statute to include a prompt pay requirement." Rogers v.
City of Troy, 148 F.3d 52, 55 (2d Cir. 1998). See also
Biggs v. Wilson, 1 F.3d 1537, 1542 (9th Cir. 1993)
(collecting cases). Importantly, the Fifth Circuit has
specifically held that there is an obligation to pay an
employee timely. See Atlantic Co. v. Broughton, 146 F.2d
480, 482 (5th Cir. 1944) ("[I]f an employer on any
regular payment date fails to pay the full amount of the
minimum wages and overtime compensation due an employee,
there immediately arises an obligation upon the employer
to pay the employee.").

Stramaski v. Texas A&M Engineering Experiment Station, Civil Action

No. 4:20-CV-00156, 2020 WL 4903917, at *6 (S.D. Tex. Aug. 20,

2020), report and recommendation adopted, Civil Action No. 4:20-CV-

00156, 2020 WL 6384416 (S.D. Tex. Oct. 30, 2020).

---

[104]Id. at 4-5 ¶¶ 32-36.

There is no dispute as to whether Plaintiff suffered an adverse employment action.

Defendant argues that Plaintiff cannot show a causal link between her complaint and her discharge because nothing in the record indicates that the individual who decided to terminate her - Ms. Berry - had any knowledge that Plaintiff reported any alleged issues concerning her pay.[105]   If the decision maker was not aware of the protected activity, the employee cannot establish a <u>prima facie</u> retaliation claim.   <u>Ramirez v. Gonzales</u>, 225 F. App'x 203, 210 (5th Cir. 2007) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker . . .").   The record indicates that Ms. Lowery — who referred the removal of the battery to Loss Prevention — and Mr. Martin — who recommended that Plaintiff be terminated — would have been on notice of Plaintiff's payroll complaint because they were copied on emails about Plaintiff's payroll issue.[106]

The court concludes that Plaintiff has made a <u>prima facie</u> showing of FLSA retaliation.

2.   <u>Plaintiff Cannot Show Pretext.</u>

Establishment of a <u>prima facie</u> case gives rise to an inference of retaliation, which shifts the burden of production to the

---

[105]Defendant's Memo, attached to Defendant's MSJ, Docket Entry No. 14-1, p. 9 (#6).

[106]Investigation File, Exhibit 4-F to Defendant's MSJ, Docket Entry No. 14-5, p. 135.

defendant who must then articulate a legitimate, nonretaliatory reason for the challenged employment action. Starnes v. Wallace, 849 F.3d 627, 631-32 (5th Cir. 2017); see also McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). Once a defendant articulates such a reason the inference of retaliation drops from the case, and the burden shifts back to the plaintiff to identify evidence that the employer's stated reason is a pretext for the real retaliatory purpose. Id.; see also Fairchild v. All American Check Cashing, Inc., 815 F.3d 959, 967 (5th Cir. 2016) (noting that the employee "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates"). If a plaintiff fails to raise a genuine issue of material fact that defendant's stated reason is a pretext for retaliation, the defendant is entitled to summary judgment. See McCoy, 492 F.3d at 560-62.

Plaintiff fails to show pretext on her retaliation claim for the same reasons she fails to show pretext on her gender discrimination claim as discussed at III.B.3 above - she cannot prove that a similarly situated individual was treated more favorably. See Stuntz v. Lion Elastomers, L.L.C., 826 F. App'x 391, 404-05 (5th Cir. 2020) (employee who had no evidence of disparate treatment failed to establish that his termination was a pretext for intentional retaliation), accord, Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate

-36-

treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.").

Plaintiff argues that Defendant's "shifting explanations" for firing her are evidence of pretext.[107]   Plaintiff states that Ms. Anderson said that Plaintiff "stole" a battery, but that "after the initial cry of 'theft,' the excuse morphed into version two: 'violation of company policy' for 'unauthorized removal of a battery.'"[108]   The court is not persuaded that this is a "shifting explanation[,]" because "stealing" and "unauthorized removal of property" are essentially the same thing in this context.

Plaintiff argues that Defendant's stated reason for firing her is "false and unworthy of credence" because the removal of the battery did not cause Defendant to suffer a significant monetary loss.[109]   Ms. Lowery was asked during the corporate representative deposition whether "AutoZone [was] more concerned with the fact that [Plaintiff] removed a battery from the store, or [was] AutoZone more concerned with the fact that it resulted in a monetary loss to AutoZone?"   She answered:   "Well, it doesn't matter who removed the product from the store.   If it's a monetary

---

[107]Plaintiff's Response, Docket Entry No. 24, p. 23.

[108]Id.

[109]Id. at 24.

loss to AutoZone, then we're concerned about it."[110]   She added:
"She removed a new battery from the store.   And once she installed
it in her vehicle, we can no longer sell it as a new battery.   We
had to mark it as a used battery, so we lost a little more than
$100."[111]   Plaintiff argues that "there is no admissible evidence
that there was even a direct loss, or event that the specific
amount was $100."[112]   But Ms. Berry's testimony is evidence that
Plaintiff's removal of the battery caused Defendant monetary loss.
Moreover, the unauthorized removal of store property is a
terminable offense,[113] whether or not it caused a monetary loss.

Plaintiff's final argument for pretext is that Ms. Anderson
passed her retaliatory animus on to the decision maker when she
reported Plaintiff for taking the battery.[114]   This argument fails
in the retaliation context for the same reason it failed in the
gender discrimination context.

---

[110]Lowery and Berry Deposition, Exhibit 1 to Plaintiff's
Response, Docket Entry No. 24-1, p. 49 line 18 through p. 50
line 2.

[111]Id. at 68 lines 1-4.

[112]Plaintiff's Response, Docket Entry No. 24, p. 24.

[113]See AutoZone's Store Handbook FY20, Exhibit 4-C to
Defendant's MSJ, Docket Entry No. 14-5, pp. 53-54 (stating that
"unauthorized possession or removal of AutoZone's or an AutoZoner's
property" is prohibited, and stating that noncompliance with
AutoZone policy could lead to termination).

[114]Plaintiff's Response, Docket Entry No. 24, pp. 25-26.

For these reasons, the court concludes that Plaintiff has failed to "put forward evidence rebutting each of the nondiscriminatory reasons [Defendant] articulates" for her termination. See Fairchild, 815 F.3d at 967. Plaintiff therefore does not raise any genuine dispute as to whether Defendant's stated reason for firing her was a pretext for FLSA retaliation. The court will grant Defendant's MSJ.

## IV.   Conclusions and Order

For the reasons stated in § III, above, the court concludes that Defendant is entitled to summary judgment on Plaintiff's Title VII and FLSA claims. Accordingly, Defendant AutoZoners, LLC's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.

Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses and/or Motion for Judgment on the Pleadings (Docket Entry No. 15) is **DENIED**.

Plaintiff's Objections to and Motion to Strike Summary Judgment Evidence Proffered by Defendants (Docket Entry No. 16) is **DENIED**.

Defendant AutoZoners, LLC's Motion in Limine (Docket Entry No. 18) and Plaintiff's Motion in Limine (Docket Entry No. 19) are **DENIED AS MOOT**.

**SIGNED** at Houston, Texas, on this the 17th day of June, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE